UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARTINA ESQUIBEL, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO.: 1:18-CV-159-JPK |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner for Operations, ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Martina Esquibel on May 31, 2018, and Plaintiff's Social Security Brief in Support of Remand for Further Proceedings [DE 15], filed on October 8, 2018. Plaintiff requests that the May 31, 2017 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On February 7, 2019, the Commissioner filed a response. Plaintiff has not filed a reply brief, and the time to do so has passed. For the following reasons, the Court denies Plaintiff's request for remand and affirms the decision of the Commissioner of the Social Security Administration.

### PROCEDURAL BACKGROUND

On February 21, 2015, Plaintiff filed an application for disability insurance benefits, and, on January 13, 2015, Plaintiff protectively filed an application for supplemental security income. Plaintiff alleges a disability onset date of July 15, 2014. The claims were denied initially and on reconsideration. Plaintiff requested a hearing, and the hearing was held on January 25, 2017. On May 3, 2017, the ALJ issued an unfavorable decision, making the following findings:[1]

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the decision. Internal citations to the Code of Federal Regulations are omitted.

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.      The claimant has not engaged in substantial gainful activity since July 15, 2014, the alleged onset date.

3.      The claimant has the following severe impairments: mild dextroscoliosis of the thoracic spine and mild to moderate degenerative disc disease (DDD) of the lumbar spine; left knee MCL injury; longstanding asthma with current mild nocturnal hypoxemia requiring nocturnal supplemental oxygen (O2); bilateral hammer toes/hallux valgus/bunions; obesity; and chronic pain syndrome.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work with standing and/or walking two hours in an eight-hour workday and with sitting the remainder of the day, as defined in 20 CFR 404.1567(b) and 416.967(b) except as reduced by the following. Additional limitations include occasional climbing of ramps/stairs, balancing, stooping, kneeling, and crouch[ing], but no crawling or climbing of ladders, ropes, or scaffolds. Finally, the claimant should avoid concentrated exposure to extreme cold/heat and to wetness, humidity, fumes, dusts, gases, poor ventilation, as well as wet, slippery or uneven surfaces, unprotected heights and dangerous moving machinery.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born [in 1970] and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date.

8.      The claimant has a limited education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2014, through the date of this decision.

(AR 114–22). The ALJ found that Plaintiff stopped working in 2014 because she moved from the State of Texas to the State of Indiana and not because of her ongoing alleged medical conditions. (AR 117, 223).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is, in fact, disabled but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g).

Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see* 42 U.S.C. § 405(g). The Court reviews the entire administrative record but does not re-weigh the evidence,

resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). "The ALJ has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively disabling, (4) whether, if the claimant does not meet a listing, the claimant is unable to perform

the claimant's past relevant work, and (5) whether, if the claimant is unable to perform past relevant work, the claimant is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001).

## ANALYSIS

In this appeal, Plaintiff contends that the ALJ did not properly consider the opinion of treating nurse practitioner Jennifer Evans or the opinion of consultative examiner Dr. Vijay Kamineni. Plaintiff does not contest the ALJ's discussion of the medical evidence, Plaintiff's subjective complaints, or the weight given to the consultative reviewing physicians.

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are weighed by considering the following factors: (1) whether there is an examining relationship; (2) whether there is a treatment relationship, and if so the length of the treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence and by explanations from the source; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

An ALJ gives a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If the ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must provide "good reasons" in the decision for the weight given to a treating source's medical opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Scott*, 647 F.3d at 739; SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).[2]

For the reasons set forth below, the Court finds that the ALJ did not err in her review of the opinion of either nurse practitioner Jennifer Evans or consultative examiner Dr. Kamineni and that substantial evidence supports the weight given to each opinion.

1. *Treating Nurse Practitioner—Jennifer Evans*

Plaintiff's treating nurse practitioner, Jennifer Evans, submitted a "Treating Source Statement" dated January 19, 2017. (AR 983–86). Therein, Ms. Evans noted that she had seen Plaintiff every three to four months since 2014 for Plaintiff's asthma, arthritis, lumbar radiculopathy, and osteopenia. *Id.* at 983. Ms. Evans opined that Plaintiff would likely be absent from work once a month due to her impairments and treatment. *Id.* Ms. Evans found that Plaintiff can frequently reach overhead and in other directions, can frequently push and pull with both hands, and can perform all other manipulative activities continuously. *Id.* at 985. Ms. Evans opined

---

[2] Although SSR 96-2p was rescinded effective March 27, 2017, the new regulations only apply to claims filed on or after the January 18, 2017 effective date of the new regulations. The claims in this case were filed in 2015.

that Plaintiff can never be exposed to dust, odors, fumes, or pulmonary irritants and should rarely be exposed to humidity and wetness, extreme heat, or extreme cold. *Id*. at 986. However, Ms. Evans indicated that she was "unable to determine" functional limitations in any of the following areas: what percentage of a typical workday Plaintiff would be "off task"; how much Plaintiff is able to lift or carry for a given period of time; how long Plaintiff can sit, stand, or walk in an eight-hour workday; whether Plaintiff requires an option to sit/stand at will; how much Plaintiff can use her feet for foot controls; or how often Plaintiff can perform postural activities. *Id*. at 983–84, 985–86. Ms. Evans indicated that Plaintiff does not need to use a cane or other assistive device. *Id*. at 984.

In her decision, the ALJ explicitly considered Ms. Evans's opinion, noting that the opinion was given in January 2017 and that Ms. Evans is a nurse practitioner. *Id*. at 119. The ALJ gave the opinion "partial weight." *Id*. The ALJ commented that Ms. Evans's opinion provided the limited findings that Plaintiff retained the ability to engage in the use of her hands, that there was no clinical observation for use of a cane, and that there was a need to limit some exposure to pulmonary irritants, extreme heat/cold, humidity, and wetness. *Id*. The ALJ wrote that she "agrees with these limitations, as reflected herein." *Id*. at 119–20. The ALJ then recognized that, in contrast with the findings Ms. Evans made, Ms. Evans was unable to assess many areas of functioning. *Id*. at 120. For that reason, the ALJ further limited the weight afforded to Ms. Evans's opinion. *Id*.

The only errors asserted by Plaintiff in relation to how the ALJ weighed Ms. Evans's opinion are that the ALJ failed to acknowledge that Ms. Evans was a "treating source" and failed to note the length of the treatment relationship. (Pl. Br. 13–14, ECF 15).

As an initial matter, Plaintiff is incorrect that the ALJ should have considered Ms. Evans to be a treating source. Although Ms. Evans is a "medical source," she is not an "acceptable medical source." Therefore, she is not a "treating source," and her opinion is not a "medical

7

opinion" under the regulations. A "medical opinion" is a statement from an "acceptable medical source." 20 C.F.R. §§ 404.1527(a), 416.927(a). Under the regulations, a nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); 20 C.F.R. §§ 404.1502(a) 416.902(a) (defining "acceptable medical source" and listing eight categories of qualifying medical sources, which do not include nurse practitioners); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010) ("A nurse-practitioner . . . is not a 'treating source.'"); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (defining "other sources" as including "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners"). And, a "treating source" must be an "acceptable medical source." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Therefore, Ms. Evans, a nurse practitioner, is not a "treating source" under the applicable regulations.

Nevertheless, information from a nurse practitioner "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. And, an ALJ may consider opinions from "medical sources" who are not "acceptable medical sources" using the same factors in §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) that apply to "medical opinions." *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). In fact, the regulations recognize that in considering those factors, "[d]epending on the particular facts in a case . . . an opinion from a medical source who is not an acceptable medical source or from a nonmedical source . . . may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." *Id*.

However, the regulations also include a section titled "Articulation," which sets forth the extent to which the ALJ must explain in her written decision the weight given to a "medical source" who is not an "acceptable medical source." The regulations provide that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of

8

the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).

The Court finds that the ALJ's discussion in this case of Ms. Evans's opinion as a nurse practitioner exceeds this standard of articulation and that the failure to note that Ms. Evans treated Plaintiff and the length of that treatment was harmless for several reasons. First, as detailed above, the ALJ explicitly considered the factors of whether the opinion was supported by relevant evidence, the consistency of the opinion as a whole, and Ms. Evans's occupation as a nurse practitioner. *See* (AR 119–20); 20 C.F.R. §§ 404.1527(c)(3)–(6), 416.927(c)(3)–(6). Overall, the ALJ considered the factors and gave good reasons for the weight given to Ms. Evans's "Treating Source Statement," none of which Plaintiff contests.

Second, the ALJ discussed most of Ms. Evans's treatment records in reviewing the medical evidence of record earlier in the decision. The administrative record contains treatment records by Ms. Evans at Parkview Health dated November 7, 2014, February 27, 2015, May 29, 2015, August 27, 2015, November 13, 2015, December 14, 2015, May 5, 2016, and September 23, 2016. *See* (AR 747–48, 752–54, 755–57, 799–801, 802–03, 805–06, 862–72, 911–12) (Exs. 18F, 19F, 28F, 30F, 34F, 38F). The ALJ specifically discussed Ms. Evans' February 27, 2015 examination findings of no acute distress and detailing all of the "unremarkable clinical findings on exam." *See* (AR 117–18) (citing Ex. F); (AR 752–53). The ALJ also noted Ms. Evans' May 29, 2015 referral of Plaintiff to "ortho for further management of left knee pain" and the resulting conservative treatment. (AR 118) (citing Ex. 17F; 28F; 41F). The ALJ discussed Ms. Evans' December 14, 2015 examination in support of the statement that "findings on clinical musculoskeletal/neurological exams/testing remained minimal to unchanged." *See id.* (citing Ex. 34F, pp. 12–16). In relation to Plaintiff's asthma, the ALJ referenced several of Ms. Evans's

treatment records in her discussion of the medical evidence, finding that "[d]espite ongoing pulmonary complaints of asthma, clinical exam findings remained minimal to unremarkable with no sustained deficits, which also suggest an effectiveness of conservative treatment with medication . . . ." *Id.* (citing Exs. 18F; 19F, p. 3; 26F; 27F; 28F; 30F; 31F; 33F, pp. 3–5; 34F, pp. 12–16; 42F; 46F).

Plaintiff does not acknowledge the ALJ's discussion of these records or argue that the ALJ improperly evaluated Ms. Evans's treatment records. Although Plaintiff details her medical records in the section of her brief titled "Underlying Records," Plaintiff does not argue that those records would require a different assessment of Ms. Evans's opinion or that the records support greater limitations than those included in the RFC. In addition, Plaintiff was treated by several other doctors and nurse practitioners at Parkview Health during the same period of time, none of whom provided a medical source statement: Dr. Cynthia Vanderbosch on July 10, 2014, July 17, 2014, September 15, 2014, and September 23, 2014, s*ee* (AR 749–50, 758–59, 760–62, 763–65, 766–68, 770–72; Dr. Jennifer Shuherkshaffer on April 28, 2015, August 10, 2015, August 19, 2015, December 14, 2015, April 27, 2016, and October 26, 2016, s*ee* (AR 793–98, 808–10, 948–51, 952–54, 962–64, 992–94, 1010–12, 1014–16, 1024–26); nurse practitioner Ludmila Roebel on April 24, 2015, *see* (AR 792); and nurse practitioner Shelli Y. Winther on June 20, 2016, and November 10, 2016, *see* (AR 915–21, 969). The ALJ discussed many of these treatment records throughout her decision.

Third, Plaintiff does not explain how the ALJ's decision would have changed if the ALJ had noted that Ms. Evans was a treating source or had noted the length of the treatment relationship in light of the other supported reasons given by the ALJ for discounting Ms. Evans's opinion. The ALJ incorporated significant limitations in the RFC supported by the medical evidence of record, limiting Plaintiff to light work with only standing and/or walking two hours in an eight-hour

workday; only occasional climbing of ramps/stairs, balancing, stooping, and kneeling and crouching; and no crawling or climbing ladders, ropes, or scaffolds. The ALJ included additional environmental limitations related to Plaintiff's asthma.

Fourth, Plaintiff does not identify any aspect of Ms. Evans's opinion that the ALJ inaccurately described in the RFC analysis.

Fifth, Plaintiff does not contest the ALJ giving less weight to Ms. Evans's opinion on the basis that Ms. Evans was unable to determine most of the exertional limitations requested by the form, which included how much Plaintiff is able to lift or carry for a given period of time; how long Plaintiff can sit, stand, or walk in an eight-hour workday; whether Plaintiff requires an option to sit/stand at will; how much Plaintiff can use her feet for foot controls; or how often Plaintiff can perform postural activities. *See* (AR 983–84, 985–86). Notably, Plaintiff's summary of Ms. Evans's opinion omits the fact that Ms. Evans was "unable to determine" a rating in these functional areas or that Ms. Evans indicated that Plaintiff does not need to use a cane or other assistive device.

Finally, in section V.1.b of her brief, Plaintiff reasons that the absence in the RFC of a limitation of missing one workday per month based on Ms. Evans's opinion means that the hypothetical questions posed to the vocational expert did not include all of the limitations imposed by Ms. Evans and, as a result, substantial evidence does not support the finding at step five of "not disabled." *Id*. at 112. However, this purported harm arises only if the ALJ erred in weighing Ms. Evans's opinion and, as a result of that error, did not include a limitation of missing one workday per month in the RFC. As set forth above, the ALJ did not err in weighing Ms. Evans's opinion.

More importantly, Plaintiff identifies no evidence of record to support a limitation of missing one workday each month.[3]

Accordingly, the ALJ did not err in giving "partial weight" to Ms. Evans's opinion and in further limiting Ms. Evans's opinion because of Ms. Evans's "inability to assess many areas of functioning," and substantial evidence supports the weight the ALJ gave to Ms. Evans's opinion. Remand is not required for reconsideration of Ms. Evans's opinion.

2.    *Consultative Examiner—Dr. Kamineni*

On April 1, 2015, Plaintiff was examined by state agency consultative examining physician Dr. Vijay Kamineni. *Id*. at 778. Plaintiff's chief complaints were asthma and arthritis as well as hyperflexability of the left knee. *Id*. Plaintiff reported her pain due to arthritis as a nine on a scale of one to ten with ten being the worst pain, and she described the pain as sharp. *Id*. Plaintiff reported that she could perform activities of daily living such as dressing, tying shoes, buttoning, unbuttoning, and picking up a coin with assistance at times. *Id*. Plaintiff indicated that she can prepare meals and drive a car. *Id*. On review of symptoms, Dr. Kamineni noted that Plaintiff reported difficulty breathing on exertion; chronic cough; shortness of breath; back, muscle, and joint pain; muscle cramps and weakness; and decreased range of motion. *Id*. at 779.

On physical examination, Dr. Kamineni found Plaintiff to be cooperative and not in acute distress or sickly. *Id*. Plaintiff's gait was stable with the use of a cane, but she was limping. *Id*. Her chest and lungs were normal, with clear lungs, no crackles, no wheezes, and good air exchange. *Id*. Plaintiff moved all extremities "equal, purposeful and to command." *Id*. at 780. Plaintiff was

---

[3] As noted by the Commissioner (although not discussed by the ALJ), there was no option on the "Treating Source Statement" form, which was provided to Ms. Evans by Plaintiff's counsel, to opine that Plaintiff would miss "no" days of work per month. The question asked Ms. Evans "how many days per month your patient is likely to be absent from work as a result of the impairments and/or treatment" and was followed by a chart with boxes numbered 1, 2, 3, 4, and 4+ ; there was no box for "0". (AR 983). Ms. Evans marked the box below the number "1".

alert and oriented times three[4] and had no gross motor focal deficits. *Id*. Plaintiff had no muscle weakness, no muscle pains, and no tenderness to palpation in the upper back. *Id.* She had full range of motion of the cervical neck without pain, no tenderness to palpation in the lumbosacral spine, and no joint swelling. *Id*. However, Dr. Kamineni observed that Plaintiff had abnormal movement of joints, abnormal gait and station, positive straight leg raise, abnormal heel/toe walking, abnormal tandem walking, and abnormal squatting. *Id*. Plaintiff was unable to crawl or kneel. *Id*. Dr. Kamineni assessed knee pain and asthma. *Id*.

At the conclusion of the report, Dr. Kamineni gave a "Medical Source Statement" in which he opined that Plaintiff would be able to sit for twenty to thirty minutes and stand for thirty minutes at the most, would be able to carry and lift ten pounds, and would not be able walk six minutes. *Id*. He further opined that Plaintiff has normal motor skills with normal handling of fine objects and normal grip strength; normal concentration and social interaction; intact remote and recent memory; and normal hearing, speech, and vision. *Id*. Finally, he opined that Plaintiff has normal range of motion except for hyperextension of the left knee with pain on palpation. *Id*. Dr. Kamineni noted that Plaintiff states that she cannot work because of her knee pain and asthma. *Id*.

In her decision, the ALJ discussed the April 2015 examination, noting that it was a physical consultative examination for the purpose of determining disability. *Id*. at 118. The ALJ noted that Plaintiff presented to Dr. Kamineni with a limping gait and using an "assistive device." *Id*. The ALJ then contrasted Plaintiff's "presentation while being seen by her treating physicians" with Dr. Kamineni's "abnormal findings including heel/toe walking, with tandem walk, with squatting, with positive bilateral straight leg raising and with movement of the joints (*i.e.* clarification of hyperextension at the left knee only)." *Id*. The ALJ then noted that Dr. Kamineni's clinical findings

---

[4] "Orientation" is the "recognition of one's temporal, spatial, and personal relationships and environment." *Stedman's Medical Dictionary* (28th ed. 2006).

13

did not otherwise support any decrease in range of motion and noted his findings of no tenderness to palpation, no joint swelling, a stable gait, no muscle weakness, no neurological deficits, and no mental status deficits. *Id.*

The ALJ then accurately described Dr. Kamineni's Medical Source Statement as limiting Plaintiff to thirty minutes of walking at most, walking six minutes at one time, lifting and carrying ten pounds, and sitting for only twenty to thirty minutes. *Id.* at 119. The ALJ gave this opinion "little weight," commenting that the state agency physicians noted that use of a cane and impaired gait were unsupported by the record. *Id.* In weighing Dr. Kamineni's opinion, the ALJ cited November 2014, February 2015, and August/September 2015 clinical findings/observations. *Id.* (citing Exs. 19F; 32F; 44F at 12–13; 46F). The ALJ also found that Plaintiff's presentation at the consultative examination by Dr. Kamineni did not "comport with [her] earlier September 2014 report for walking two miles daily in 30 minutes, the lack of significant clinical findings on multiple other[] exams, her history of conservative treatment, or her more recent March 2016 report [of] walking a mile and a half." *Id.* (citing Exs. 17F; 19F at 8, 19; 41F at 11).

Plaintiff does not contest the ALJ's summary of Dr. Kamineni's opinion; the ALJ's observations that Dr. Kamineni's abnormal findings regarding walking, squatting, leg raises, and joint movement are inconsistent with how Plaintiff presented herself to treating physicians; the ALJ's recitation of the otherwise largely normal examination findings by Dr. Kamineni; or the ALJ's contrasting of Plaintiff presenting with a limp and using a cane to Dr. Kamineni with several other reports in the record that do not support such limitations. Rather, Plaintiff makes two arguments regarding how the ALJ weighed of Dr. Kamineni's opinion, neither of which requires remand.

Plaintiff's first argument is that the ALJ erred by failing to make a finding as to whether a cane was medically necessary. This argument is unavailing for several reasons presented by the

Commissioner. First, Dr. Kamineni did not opine that Plaintiff needed to use a cane; rather, he observed that Plaintiff was using one at the appointment. *Id.* at 770, 780. Second, as noted above, Plaintiff's treating nurse practitioner, Ms. Evans, explicitly opined that Plaintiff does not need a cane or other assistive device, and the ALJ recognized this opinion. *Id.* at 119, 984. Ms. Evans was asked, "Does Martina Esquibel require the use of a cane or other assistive device to 'ambulate effectively'? To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* at 984. Ms. Evans checked the box, "No." *Id.* The subsequent question asked, "Does [sic] need a cane or other assistive device, at least sometimes?" *Id.* Ms. Evans again checked the box, "No." *Id.* Third, as noted by the ALJ, Plaintiff reported in September 2014 that she daily walked two miles in thirty minutes and reported in March 2016 that she had walked one and a half miles when she locked her keys in the car, albeit with some pain when she arrived at her house. *Id.* at 119, 758, 934. Neither of these reports is consistent with a medical need to use a cane, and the ALJ found that these reports were inconsistent with Dr. Kamineni's opinion that Plaintiff could not walk for more than six minutes. Plaintiff does not acknowledge or discuss the September 2014 or March 2016 reports. Fourth, Plaintiff testified that she no longer uses a cane on a regular basis. *Id.* at 230–31. Plaintiff has not responded to any of these arguments, nor has Plaintiff identified evidence of record to support the need for a cane. The ALJ did not err by not separately discussing whether a cane was medically necessary.

Plaintiff's second argument is that the ALJ failed to incorporate in the RFC a sit/stand option or to explain why a sit/stand option was excluded from the RFC. Plaintiff contends that Dr. Kamineni opined that Plaintiff must alternate frequently between sitting and standing/walking, *see* (Pl. Br. 15, ECF No. 15); however, Dr. Kamineni did not make a finding regarding a sit/stand option. Rather, he opined that Plaintiff is limited to sitting for twenty to thirty minutes and is

limited to standing for thirty minutes. (AR 780). As set forth above, the ALJ gave several reasons, supported by the evidence of record and uncontested by Plaintiff, for giving Dr. Kamineni's exertional limitations "little weight." *Id*. at 118–19. Moreover, Ms. Evans indicated in her "Treating Source Statement" that she was unable to offer an opinion on whether Plaintiff required a sit/stand option or on whether Plaintiff had any limitation in sitting, standing, or walking. *Id*. at 984. In addition, Plaintiff testified that she could stand for two hours at one time. *Id*. at 229. Although Plaintiff testified that standing for two hours would cause her great pain, the ALJ's RFC finding would not require Plaintiff to stand for two hours at one time but rather to stand and/or walk for two hours total in an eight-hour workday with sitting the remainder of the day. *Id*. at 115. As for sitting, Plaintiff testified that she can only sit for two to three hours before needing to stand, which is longer than the thirty minutes Dr. Kamineni opined she was able to sit. *Id*. at 230. Plaintiff has not met her burden of offering evidence to prove that she needs a sit/stand option. *See* 20 C.F.R. §§ 404.1512, 416.912. The ALJ did not err by omitting a discussion of the need for a sit/stand option. *See* SSR 83-12, 1983 WL 31253, at *4 (1983) (addressing the "special situation" when an assessment of RFC is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting or standing).

Accordingly, Plaintiff has not identified any reversible error in the ALJ's RFC determination or any basis on which to find that the ALJ's RFC determination is not supported by substantial evidence. At the hearing, the ALJ presented the vocational expert with a hypothetical that was consistent with the RFC finding, and the vocational expert testified that, based on the hypothetical, Plaintiff would be able to perform the jobs of polisher, final assembler, and stem mounter. (AR 257, 258). Plaintiff does not contest the vocational expert's testimony or the ALJ's reliance on that specific testimony in finding Plaintiff not disabled at step five of the sequential analysis.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in Plaintiff's Social Security Brief in Support of Remand for Further Proceedings [DE 15] and **AFFIRMS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 15th day of April, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT